# THE MIAMI HERALD PUBLISHING COMPANY, etc., et al. v STATE OF FLORIDA, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, etc., et al.

## Case No. 85-10811 (CJ)

Seventeenth Judicial Circuit, Broward County

May 9, 1985

### APPEARANCES OF COUNSEL

**Gerald Budney** and **Laura Pula** for the Miami Herald Publishing Company.

**Herald Brannen** and **Jay Adams** for the Department of Health and Rehabilitative Services.

### OPINION OF THE COURT

MEL GROSSMAN, Circuit Judge.

### WRIT OF MANDAMUS/FINAL JUDGMENT

This is an action for a Writ of Mandamus which was tried before the Court in an expedited hearing held pursuant to the mandate of Section 119.11(1), Florida Statutes (1983). Jurisdiction is vested in this Court by virtue of Article V, Section 5 of the Florida Constitution and

Chapter 119, Florida Statutes (1983). The Court has reviewed and considered the pleadings and the testimony presented, and reviewed *in camera* the documents at issue which were placed into evidence, and heard argument from counsel for the parties, and the Court being duly advised, makes the following conclusions of law and findings of fact.

## FINDINGS OF FACT

1. Petitioner The Miami Herald Publishing Company is a division of Knight-Ridder Newspaper, Inc., a Florida corporation, and published *The Miami Herald* as the Editor of its Broward News section. Petitioners will be referred to collectively as *"the Miami Herald"*.

2. Respondent State of Florida, Department of Health and Rehabilitative Services, District 10 ("HRS") at all material times was and is an agency of the State of Florida. HRS is an "agency" within the meaning of Section 119.011, Florida Statutes (1983). Respondent John L. Stokesberry is District 20 Administrator of HRS, and at all times material to this action, was the custodian of the HRS records at issue. Respondents will be referred to collectively as "HRS".

3. On April 30, 1985, a seven year old child, Reed Hauff (the "Child") died from injuries inflicted by beating.

4. Police arrested Jeffrey Hock ("Hock") and charged him with the murder of the Child.

5. Prior to the beating death of the Child, HRS had received one or more reports of child abuse committed by Hock against the Child, had performed at least one on-site protective investigation of Hock's treatment of the Child, as required by Section 415.05, Florida Statutes, and had compiled certain records concerning the Child (the "HRS" Records).

6. The testimony of the witness at the hearing, LuAnne Mims, and the Court's *in camera* inspection of the HRS Records, which were placed into evidence by HRS at the Court's request, show Hock, rather than the Child's parents, was, de facto, the person responsible for the Child's welfare. The records which were reviewed went so far as to list Hock as guardian. While there is nothing to indicate any formally created status of guardian, Section 415.51 does not require such. It refers to "parents or other persons responsible for the child's welfare. . ." This court finds that Hock is the person who holds the status which the statute protects.

7. HRS is charged by Florida law to protect children from abuse and neglect.

8. The HRS Records relate to the manner in which HRS discharges

76

its statutory duties to children. The HRS Records were made and received in the court of official business.

9. On May 1, 1985 *The Miami Herald* formally requested (the "Public Records Request") that it be allowed to inspect the HRS Records, pursuant to Chapter 119, Florida Statutes.

10. Respondents denied *The Miami Herald's* Public Records Request and refused to permit inspection of the HRS Records.

## CONCLUSIONS OF LAW

1. The HRS Records are public records as such term is defined in Section 119.011(1), Florida Statutes subject to any provisions of confidentiality.

2. *The Miami Herald* has a clear legal right to inspect the HRS Records, and HRS has a clear legal duty to permit such inspection, subject again to statutory provisions of confidentiality, as limited by constitutional considerations which need not be reached here.

3. The sole basis for HRS' refusal to permit inspection of the HRS Records is its argument that these Records "are not subject to public inspection by virtue of Section 415.51(1), Florida Statutes. . ."

4. *The Miami Herald* made this Public Records Request in furtherance of the public's right to know how HRS is conducting its statutory duties regarding the protection of the Child and other children from abuse and neglect.

5. The Public Records Act, Chapter 119, Florida Statutes, is to be accorded a liberal construction, *Tober v. Sanchez*, 417 So.2d 1053 (Fla. 3rd DCA 1982), and thus exemptions are to be construed narrowly.

6. All parties stipulate that the purpose of the exemption provided by Section 415.51 is, as the statute itself provides, "to protect the rights of the child and his parents or other persons responsible for the child's welfare. . ." One additional category exempted is that of a report of a suspected incident of child abuse. This latter class is not disputed. All parties have stipulated to the deletion of those names.

7. Section 415.51 exempts from the Public Records Act only those records as are necessary to protect the confidentiality rights of the child who is the subject of the records and such persons, which may include the parents, who are responsible for the child's welfare.

8. Because the Child to which the HRS Records relate is tragically dead, he no longer needs the shield of confidentiality and there are no confidentiality "rights of the child" to protect as contemplated by Section 415.51(1), Florida Statutes.

**77**

9. Hock, who has been officially charged with the murder of the Child, has no protected right of or interest in confidentiality.

10. HRS does not contend confidentiality rights or interests of the Child or Hock are involved here. Instead, HRS alleges that the rights of the Child's parents must be considered separately, and that such alleged rights must prevent disclosure of the HRS Records under Section 415.51(1).

11. Upon *in camera* review of the HRS Records and consideration of the testimony before the Court, the Court has found that Hock, and not the Child's parents, was responsible for the welfare of the Child.

12. Not being persons who were, de facto, responsible for the welfare of the Child, the Child's parents have no confidentiality rights to protect under Section 415.51.

13. Because both the Child and the person responsible for the Child's welfare have no rights to or interest in confidentiality, the exemption provided in Section 415.51, Florida Statutes, does not apply to the HRS Records in this case.

14. There is a compelling public interest in access to the HRS Records because the public has a right to evaluate the manner in which HRS performed its statutory duty to protect the Child. There is no countervailing governmental interest. Indeed, it is always of benefit to a governmental entity as well as society that the actions of such be open to review by the public. We live in an age of more and more suspicion and cynicism about government. This attitude is one that can only be increased by bureaucracy shrouding its actions in secrecy. Whether an agency has done a good, bad, or mediocre job of performing its duties, secrecy can only lead the citizenry to assume the worst.

In a free and democratic society, in which citizens have a right to exercise their choices by voting, government can not be permitted to limit the ability of citizens to exercise their voting power in an intelligent and informed manner. Indeed, not only is there an obligation to conduct public affairs publicly (save for a critical contravening interest), but an obligation as well, to actively inform the public of its workings.

Making government's work for the public, in fact, public will result, sometimes, in public praise; sometimes, in public criticism. It will, however, always result in providing a great and salutory incentive to government officials and employees to strive for performance that will bring praise. Secrecy can only create complacency, arrogance, and the kind of performance which demeans the governmental body, fails in

the fulfillment of the latter's duty to the public, and, therefore, produces the kind of dissatisfaction of the citizenry that is the chief internal danger to a free society.

15. Mandamus is a judicially approved method for *The Miami Herald* to seek the relief sought here. *News-Press Publishing Co. v. Wisher*, 345 So.2d 646 (Fla. 1977).

In accordance with the aforesaid Findings of Fact and Conclusions of Law, it is hereby ORDERED AND ADJUDGED that Respondents John L. Stokesberry and State of Florida, Department of Health and Rehabilitative Services and their agents, servants, designees, subordinates and/or employees acting within the course of their employment and scope of authority permit Petitioners, The Miami Herald Publishing Company and Chris Cubbison, to inspect the HRS Records requested by Chris Cubbison on May 1, 1985, as described in Petition for Writ of Mandamus, within 48 hours of entry of this Writ of Mandamus, as provided by Section 119.11(2) and subject to the deletion of reporters' names.